12 CIV 4290

**OUTTEN & GOLDEN LLP**
Justin M. Swartz
Ossai Miazad
Delyanne D. Barros
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: (212) 245-1000

**HOFFMAN & LAZEAR**
H. Tim Hoffman
(*pro hac vice* motion forthcoming)
180 Grand Avenue, Suite 1550
Oakland, California 94612
Telephone: (510) 763-5700

**FOLKENFLIK & MCGERITY**
Max Folkenflik
1500 Broadway, 21st Floor
New York, NY 10036
Telephone: (212) 757-0400

**MARKUN ZUSMAN & COMPTON LLP**
William A. Baird, Esq.
(*pro hac vice* motion forthcoming)
17383 Sunset Boulevard, Suite A-380
Pacific Palisades, California 90272
Telephone:  (310) 454-5900

*Additional Counsel on Signature Page*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x

SANA ZARA BUKHARI, MEGAN FAYE COWELL,
JANE KILLIAN, individually and on behalf
of all others similarly situated,

                                    Plaintiffs,                    **CLASS ACTION COMPLAINT**

                    v.

DELOITTE & TOUCHE LLP and DELOITTE LLP,
a limited liability partnership,

                                    Defendants.

-------------------------------------------------------------------x

        Plaintiffs Sana Zara Bukhari, Megan Faye Cowell, and Jane Killian, by their attorneys

Outten & Golden LLP, Folkenflik & McGerity, Hoffman & Lazear and the Wynne Law Firm, for

themselves and on behalf of all others similarly situated, for claims against Defendants Deloitte

& Touche LLP and Deloitte LLP (collectively "Defendants" or "Deloitte"), allege as follows:

1

## NATURE OF THE ACTION

1.      On August 10, 2011, current and former Non-Licensed employees employed in the positions of Audit Assistant, Audit Senior Assistant, Audit In-Charge and Audit Senior (as defined by Deloitte), also sometimes referred to respectively as Staff 1, Staff 2, Senior 1, and Senior 2, who have been employed by Deloitte to perform external audits filed a consolidated Complaint on behalf of themselves and all other similarly situated persons as a collective and class action under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201, *et seq.* and the New York Labor Law.  *In re Deloitte & Touche LLP Overtime Litigation*, No. 11 Civ. 02464.

2.      The *In re Deloitte & Touche LLP Overtime Litigation*, No. 11 Civ. 02464 has been assigned to the Honorable Richard M. Berman in the Southern District of New York.

3.      Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff Bukhari seeks to represent current and former Non-Licensed employees who have been employed by Defendants as current and former Non-Licensed employees employed in the positions of Audit Assistant, Audit Senior Assistant, Audit In-Charge and Audit Senior (as defined by Deloitte), also sometimes referred to respectively as Staff 1, Staff 2, Senior 1, and Senior 2, who have been employed by Deloitte to perform external audits (collectively the "Covered Positions") in the State of Massachusetts at any time since May 30, 2010 (the "Massachusetts Eligibility Period") to whom Deloitte failed to and continues to fail to pay overtime for work performed in excess of forty (40) hours per week in violation of the Massachusetts wage and hour law, 21 Mass. Gen. Laws Ch. 151 §§ 1A *et seq.*, including 21 Mass. Gen. Laws ch. 151 §§ 1B and 15 ("MAWHL").

4.      Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff Cowell seeks to represent current and former Non-Licensed employees who have been employed by

Deloitte in the Covered Positions in the State of Minnesota at any time since May 30, 2009 (the "Minnesota Eligibility Period") to whom Deloitte failed to and continues to fail to pay overtime for work performed in excess of forty (40) hours per week in violation of Minn. Stat. Ann. § 177.21 *et seq.*, including §§ 177.25,177.27 (collectively, the "Minnesota Wage Laws").

5.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff Killian seeks to represent current and former Non-Licensed employees who have been employed by Deloitte in the Covered Positions in the State of Ohio at any time since May 30, 2010 (the "Ohio Eligibility Period") to whom Deloitte failed to and continues to fail to pay overtime for work performed in excess of forty (40) hours per week in violation of Ohio Rev. Code Ann. §§ 4111.01 *et seq.*, including §§ 4111.03, 4111.08, 4111.10 and 4413.15 (collectively, the "Ohio Wage Laws").

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over Plaintiffs' state-law claims based upon the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2)(A) because the aggregated claims of the individual class members exceed the sum value of $5,000,000, exclusive of interests and costs.

7.     More than two-thirds of each of the proposed classes, on the one hand, and Defendants, on the other, are citizens of different states.

8.     The Southern District of New York is proper venue under 28 U.S.C.A. § 1391(b)(1) because Deloitte's business headquarter is in the Southern District of New York, and a substantial part of the events that gave rise to the claims in this action took place in this judicial district.

3

**PARTIES**

**Plaintiffs**

**Sana Zara Bukhari**

9.      Plaintiff Bukhari is a Massachusetts resident who worked for Defendants from August 2006 through July 2010.

10.     Plaintiff Bukhari was an Audit Assistant and Senior Audit Assistant employed by Defendants in the State of Massachusetts during the statutory period covered by this Complaint. Defendants failed to compensate her for all hours worked, including premium compensation at one and one-half times her regular rate for all hours above and beyond forty (40) hours in any given workweek.

11.     At all relevant times, Plaintiff Bukhari was not licensed as a Certified Public Accountant.

12.     Throughout the relevant period, Plaintiff Bukhari was a covered employee within the meaning of the MAWHL.

**Megan Faye Cowell**

13.     Plaintiff Cowell is a Minnesota resident who worked for Defendants from September 2009 through November 2011.

14.     Plaintiff Cowell was an Audit Assistant employed by Defendants during the statutory period covered by this Complaint.  Defendants failed to compensate her for all hours worked, including premium compensation at one and one-half times his regular rate for all hours above and beyond forty (40) hours in any given workweek.

15.     At all relevant times, Plaintiff Cowell was not licensed as a Certified Public Accountant.

16.     Throughout the relevant period, Plaintiff Cowell was a covered employee within the meaning of the Minnesota Wage Laws.

**Jane Killian**

17.     Plaintiff Killian is an Ohio resident who worked for Defendants from September 2010 through April 2012.

18.     Plaintiff Killian was an Audit Associate employed by Defendants during the statutory period covered by this Complaint.  Defendants failed to compensate her for all hours worked, including premium compensation at one and one-half times his regular rate for all hours above and beyond forty (40) hours in any given workweek.

19.     At all relevant times, Plaintiff Killian was not licensed as a Certified Public Accountant.

20.     Throughout the relevant period, Plaintiff Killian was a covered employee within the meaning of the Ohio Wage Laws.

**Defendants**

21.     Deloitte & Touche LLP is one of the largest privately held professional services businesses in the United States, and through its affiliates, is part of one of the largest such organizations in the world.  The ultimate international parent of all of the affiliated Deloitte entities is Deloitte Touche Tohmatsu Limited ("DTTL"), a UK private company with limited liability referred to as "limited by guarantee."

5

22.     In the United States, Deloitte LLP is the member firm of DTTL. Like DTTL, Deloitte LLP does not provide services to clients. Instead, services are primarily provided by the subsidiaries of Deloitte LLP, including: Deloitte & Touche LLP; Deloitte Consulting LLP; Deloitte Financial Advisory Services LLP; Deloitte Tax LLP; Deloitte LLP helps coordinate the activities of these subsidiaries. Deloitte LLP and these subsidiaries are separate and distinct legal entities. Each of these subsidiaries is organized under Delaware law, is separately capitalized, has its own Chairman and CEO and Board of Directors, and provides a distinct array of services. Deloitte & Touche LLP has its headquarters in the city and state of New York. Deloitte & Touche LLP offers audit services through its Audit and Enterprise Risk Services practice. ("AERS"). All members of the Classes were employed by Deloitte in AERS and performed external audits.

23.     Deloitte & Touche LLP and Deloitte Touche LLP are, and have been throughout the relevant time period, the employer of all members of the Classes for the purposes of the MAWHL, the Minnesota wage and hour laws, and the Ohio wage and hour laws.

## CLASS ACTION ALLEGATIONS

### *The Massachusetts Class*

24.     Plaintiff Bukhari brings the First Cause of Action, Massachusetts claim, under Rule 23 of the Federal Rules of Civil Procedure, on behalf of herself and a class consisting of all current and former Non-Licensed employees who have been employed by Deloitte in the Covered Positions in the State of Massachusetts at any time since May 30, 2010, and the date of final judgment in this matter (the "Massachusetts Class").

25.     Excluded from the Massachusetts Class are Defendants' legal representatives,

6

officers, directors, assigns, and successors, or any individual who has, or who at any time during

the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is

assigned and any member of the Judges' immediate family; and all persons who will submit

timely and otherwise proper requests for exclusion from the Massachusetts Class.

26.     The persons in the Massachusetts Class identified above are so numerous that

joinder of all members is impracticable.  Although the precise number of such persons is not

known to Plaintiff, the facts on which the calculation of that number can be based are presently

within the sole control of Defendants.

27.     The Massachusetts Class is comprised of more than 400 employees.

28.     Defendants acted or refused to act on grounds generally applicable to the

Massachusetts Class, thereby making appropriate final injunctive relief or corresponding

declaratory relief with respect to the Massachusetts Class as a whole.

29.     This action is properly maintainable as a class action under Federal Rule of Civil

Procedure 23(b)(3).  There are questions of law and fact common to the Massachusetts Class that

predominate over any questions solely affecting individual members of the Massachusetts Class,

including but not limited to:

a.     whether Defendants failed to keep true and accurate time records for all

hours worked by Plaintiff and the Massachusetts Class;

b.     what proof of hours worked is sufficient where an employer fails in its

duty to maintain true and accurate time records;

c.     whether Defendants failed and/or refused to pay Plaintiff and the

Massachusetts Class overtime pay for hours worked in excess of 40 hours per workweek as

required by the MAWHL;

        d.     the nature and extent of the class-wide injury and the appropriate measure of damages for the Massachusetts Class;

        e.     whether Defendants have a policy of misclassifying workers as exempt from coverage of the overtime provisions of the MAWHL; and

        f.     whether Defendants' policy of misclassifying workers was done willfully or with reckless disregard of the law.

    30.    The claims of Plaintiff Bukhari are typical of the claims of the Massachusetts Class she seeks to represent. Plaintiff and the Massachusetts Class Members work or have worked for Defendants in Massachusetts and have been subjected to its policy and pattern or practice of failing to pay overtime wages for hours worked in excess of 40 hours per week. Defendants acted and refused to act on grounds generally applicable to the Massachusetts Class, thereby making declaratory relief with respect to the Massachusetts Class appropriate.

    31.    Plaintiff Bukhari will fairly and adequately represent and protect the interests of the Massachusetts Class.  Plaintiff understands that, as a class representative, she assumes a fiduciary responsibility to the Massachusetts Class to represent its interests fairly and adequately. Plaintiff recognizes that as a class representative, she must represent and consider the interests of the Massachusetts Class just as she would represent and consider her own interests. Plaintiff understands that in decisions regarding the conduct of the litigation and its possible settlement, she must not favor her own interests over those of the Massachusetts Class. Plaintiff recognizes that any resolution of a class action lawsuit, including any settlement or dismissal thereof, must be in the best interests of the Massachusetts Class. Plaintiff understands that in order to provide

adequate representation, she must remain informed of developments in the litigation, cooperate with class counsel by providing them with information and any relevant documentary material in her possession, and testify, if required, in a deposition and in trial.

32.    Plaintiff Bukhari has retained counsel competent and experienced in complex class action employment litigation.

33.    A class action is superior to other available methods for the fair and efficient adjudication of this litigation – particularly in the context of wage litigation like the present action, where an individual plaintiff may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant.  The members of the Massachusetts Class have been damaged and are entitled to recovery as a result of Defendants' common and uniform policies, practices, and procedures.  Although the relative damages suffered by individual members of the Massachusetts Class are not *de minimis*, such damages are small compared to the expense and burden of individual prosecution of this litigation.  In addition, class treatment is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

***The Minnesota Class***

34.    Plaintiff Cowell brings the Second Cause of Action, Minnesota claim, under Rule 23 of the Federal Rules of Civil Procedure, on behalf of herself and a class consisting of all current and former Non-Licensed employees who have been employed by Deloitte in the Covered Positions in the State of Massachusetts at any time since May 30, 2009, and the date of final judgment in this matter (the "Minnesota Class").

35.    Excluded from the Minnesota Class are Defendants' legal representatives,

officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Minnesota Class.

36.     The persons in the Minnesota Class identified above are so numerous that joinder of all members is impracticable.  Although the precise number of such persons is not known to Plaintiff, the facts on which the calculation of that number can be based are presently within the sole control of Defendants.

37.     The Minnesota Class is comprised of more than 240 employees.

38.     Defendants acted or refused to act on grounds generally applicable to the Minnesota Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Minnesota Class as a whole.

39.     This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).  There are questions of law and fact common to the Minnesota Class that predominate over any questions solely affecting individual members of the Minnesota Class, including but not limited to:

a.     whether Defendants failed to keep true and accurate time records for all hours worked by Plaintiff and the Minnesota Class;

b.     what proof of hours worked is sufficient where an employer fails in its duty to maintain true and accurate time records;

c.     whether Defendants failed and/or refused to pay Plaintiff and the Minnesota Class overtime pay for hours worked in excess of 40 hours per workweek as required

10

by Minnesota wage and hour laws;

        d.     the nature and extent of the class-wide injury and the appropriate measure of damages for the Minnesota Class;

        e.     whether Defendants have a policy of misclassifying workers as exempt from coverage of the overtime provisions of the Minnesota wage and hour laws; and

        f.     whether Defendants' policy of misclassifying workers was done willfully or with reckless disregard of the law.

40.     The claims of Plaintiff Cowell are typical of the claims of the Minnesota Class she seeks to represent. Plaintiff and the Minnesota Class Members work or have worked for Defendants in Minnesota and have been subjected to its policy and pattern or practice of failing to pay overtime wages for hours worked in excess of 40 hours per week.  Defendants acted and refused to act on grounds generally applicable to the Minnesota Class, thereby making declaratory relief with respect to the Minnesota Class appropriate.

41.     Plaintiff Cowell will fairly and adequately represent and protect the interests of the Minnesota Class.  Plaintiff understands that, as a class representative, she assumes a fiduciary responsibility to the Minnesota Class to represent its interests fairly and adequately. Plaintiff recognizes that as a class representative, she must represent and consider the interests of the Minnesota Class just as she would represent and consider her own interests. Plaintiff understands that in decisions regarding the conduct of the litigation and its possible settlement, she must not favor her own interests over those of the Minnesota Class. Plaintiff recognizes that any resolution of a class action lawsuit, including any settlement or dismissal thereof, must be in the best interests of the Minnesota Class. Plaintiff understands that in order to provide adequate

11

representation, she must remain informed of developments in the litigation, cooperate with class counsel by providing them with information and any relevant documentary material in her possession, and testify, if required, in a deposition and in trial.

42.     Plaintiff Cowell has retained counsel competent and experienced in complex class action employment litigation.

43.     A class action is superior to other available methods for the fair and efficient adjudication of this litigation – particularly in the context of wage litigation like the present action, where an individual plaintiff may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant.  The members of the Minnesota Class have been damaged and are entitled to recovery as a result of Defendants' common and uniform policies, practices, and procedures.  Although the relative damages suffered by individual members of the Minnesota Class are not *de minimis*, such damages are small compared to the expense and burden of individual prosecution of this litigation.  In addition, class treatment is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

***The Ohio Class***

44.     Plaintiff Killian brings the Third Cause of Action, Ohio claim, under Rule 23 of the Federal Rules of Civil Procedure, on behalf of herself and a class consisting of all current and former Non-Licensed employees who have been employed by Deloitte in the Covered Positions in the State of Ohio at any time since May 30, 2010, and the date of final judgment in this matter (the "Ohio Class").

45.     Excluded from the Ohio Class are Defendants' legal representatives, officers,

directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Ohio Class.

46.     The persons in the Ohio Class identified above are so numerous that joinder of all members is impracticable.  Although the precise number of such persons is not known to Plaintiff, the facts on which the calculation of that number can be based are presently within the sole control of Defendants.

47.     The Ohio Class is comprised of more than 300 employees.

48.     Defendants acted or refused to act on grounds generally applicable to the Ohio Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Ohio Class as a whole.

49.     This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).  There are questions of law and fact common to the Ohio Class that predominate over any questions solely affecting individual members of the Ohio Class, including but not limited to:

a.     whether Defendants failed to keep true and accurate time records for all hours worked by Plaintiff and the Ohio Class;

b.     what proof of hours worked is sufficient where an employer fails in its duty to maintain true and accurate time records;

c.     whether Defendants failed and/or refused to pay Plaintiff and the Ohio Class overtime pay for hours worked in excess of 40 hours per workweek as required by the Ohio

13

wage and hour laws;

      d.    the nature and extent of the class-wide injury and the appropriate measure of damages for the Ohio Class;

      e.    whether Defendants have a policy of misclassifying workers as exempt from coverage of the overtime provisions of the Ohio wage and hour laws; and

      f.    whether Defendants' policy of misclassifying workers was done willfully or with reckless disregard of the law.

50.    The claims of Plaintiff Killian are typical of the claims of the Ohio Class she seeks to represent. Plaintiff and the Ohio Class Members work or have worked for Defendants in Ohio and have been subjected to its policy and pattern or practice of failing to pay overtime wages for hours worked in excess of 40 hours per week.  Defendants acted and refused to act on grounds generally applicable to the Ohio Class, thereby making declaratory relief with respect to the Ohio Class appropriate.

51.    Plaintiff Killian will fairly and adequately represent and protect the interests of the Ohio Class.  Plaintiff understands that, as a class representative, she assumes a fiduciary responsibility to the Ohio Class to represent its interests fairly and adequately.  Plaintiff recognizes that as a class representative, she must represent and consider the interests of the Ohio Class just as she would represent and consider her own interests.  Plaintiff understands that in decisions regarding the conduct of the litigation and its possible settlement, she must not favor her own interests over those of the Ohio Class. Plaintiff recognizes that any resolution of a class action lawsuit, including any settlement or dismissal thereof, must be in the best interests of the Ohio Class. Plaintiff understands that in order to provide adequate representation, she must

remain informed of developments in the litigation, cooperate with class counsel by providing them with information and any relevant documentary material in her possession, and testify, if required, in a deposition and in trial.

52.     Plaintiff Killian has retained counsel competent and experienced in complex class action employment litigation.

53.     A class action is superior to other available methods for the fair and efficient adjudication of this litigation – particularly in the context of wage litigation like the present action, where an individual plaintiff may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant.  The members of the Ohio Class have been damaged and are entitled to recovery as a result of Defendants' common and uniform policies, practices, and procedures.  Although the relative damages suffered by individual members of the Ohio Class are not *de minimis*, such damages are small compared to the expense and burden of individual prosecution of this litigation.  In addition, class treatment is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

## CLASS FACTUAL ALLEGATIONS

54.     Defendants' primary source of business is the auditing of financial statements. What is generally referred to as an "audit" is the examination of client-prepared financial statements made in accordance with Generally Accepted Auditing Standards ("GAAS"), or certain other recognized similar standards, and the expression of an opinion as to whether the client's financial statements are fairly stated and free of material misstatements.  Non-partner employees at Deloitte are divided into seven different categories: Audit Assistant, Audit Senior

Assistant, Audit In-Charge, Audit Senior, Audit Manager, Audit Senior Manager and Audit Director. To be an Audit Manager or higher, an employee must be a Certified Public Accountant ("CPA"). The four lower positions do not require a CPA license. The proposed classes consist entirely of employees and former employees in the lower four positions, and excludes those who are licensed as CPAs or those employed in capacities other than in external audit.

55.     Every financial audit performed by Deloitte consists of five phases: 1) preliminary engagement activities, 2) audit planning, 3) performing the audit plan, 4) concluding and reporting, and 5) post-engagement activities. Performing the audit plan means testing financial statements of clients to see if they are free of material errors.

56.     As unlicensed employees remain at the company for longer periods of time, they are promoted to positions as "Seniors," where they continue to perform non-exempt tasks.

57.     All Class Members have received the same national core audit training commensurate with their respective levels of experience. The purpose of the national training is to ensure that all unlicensed employees perform audits in the same manner. The performance of audit procedures, which is also referred to as "auditing" or "testing" for members of the class primarily involves tasks such as adding numbers (or checking addition), multiplying numbers, comparing numbers to see if they are the same, and "observing inventory" which involves watching the client count inventory items and recounting on a sample basis.

58.     Other audit procedures include "testing internal controls," which involves tasks such as performing "walk throughs." That task comprises asking the client to describe its procedures and recording what they say.   "Testing internal controls" also includes, on a sample basis, checking documents for proper signatures or other similar evidence that the "control"

requirements (such as proper signatures on checks or shipping authorizations, two signatures on checks for amounts over a stated dollar value, or similar procedures) have been met.

59.     Class Members also spend time "rolling forward" last year's work papers, which consists of the mechanical task of deleting numbers and words which apply to last year's financial statements or testing, and inserting numbers and words which apply to the current year's financial statements and audit tests.

60.     Seniors spend significant time performing testing as well.  Generally, the "audit plan," and the work paper templates are copied largely, if not entirely, from the plan established in the prior year's audit of that client, referred to in the accounting business as "SALY," short for "Same As Last Year."  When the audit is of a new client or when it changes from a prior year, a licensed CPA, who is at least a manager or higher, must be deeply involved in establishing the plans.  In accordance with professional accounting standards, and as a matter of law and of Deloitte internal policies, all audit plans must be approved by a CPA, and by the Partner with final responsibility for the audit (the "Audit Partner").  Seniors are also generally responsible for archiving the work papers on the Deloitte's "WAU" system.

61.     All audit work must be carefully documented in work papers, a task that takes much of the time of the class members.

62.     During the audit process, Class Members in their first two years of employment are required to discuss any significant issues as they arise with the Seniors or Managers on the engagement.  Seniors must discuss any significant issues with Managers or Partners.  Class Members are prohibited from making any final decision on any matter which might be material to the audit or to Deloitte's opinion on the financial statements.  Most of the time, approval must

17

first be sought from one or more levels of more senior employees who then obtain approval from the Audit Partner.

63.     The audit approach developed by Deloitte seeks to standardize employee training across all offices of the firm. The software used by employees of Deloitte called Audit Systems 2 (AS/2), supports all phases of the audit process and contains tools for analyzing, documenting, managing, communicating and presenting information.  This software can generate Model Audit Programs ("MAPS"), which are like detailed roadmaps created during the audit planning phase which set forth how to complete each section of the audit.  Often in the audit process, statistical sampling is required.  When that occurs, Class Members simply "plug in" certain parameters, such as the gross sales, gross profits, or other easily identified number into a computer program and it computes the sample size.  Another computer program will select which records or underlying documents should be reviewed in the sample.

64.     Deloitte has intentionally limited the potential for individual discretion and independent judgment of Class Members in order to maintain quality controls and to limit liability, as well as to comply with legal and professional requirements.

65.     State laws, which are largely uniform nationwide, including Massachusetts, Minnesota and Ohio law, generally provide that unlicensed employees engaged in audits must work under the control and supervision of a CPA.  Similar uniform nationwide rules have been promulgated by the American Institute of Certified Public Accountants ("AICPA"), a professional organization for CPAs, and the Public Company Accounting Oversight Board ("PCAOB"), a private non-profit corporation created by the Sarbanes-Oxley Act to oversee the auditors of public companies.

18

66.     Companies whose financial statements are audited are generally referred to as audit clients, and the public accounting firms that perform audits are generally referred to as audit firms, CPA firms, or independent auditors.  The professional practice of auditing financial statements in the United States is regulated and controlled by a mixture of private-sector and public standard setters and governing authorities.

67.     Each individual state government issues CPA licenses for practice in that state and issues regulations that govern the work of accounting professionals within that state.  There is a National Association of State Boards of Accountancy (NASBA) that is a voluntary association of state boards of accountancy (the common title of the state agency that regulates the practice of public accountancy in that state).  NASBA has issued a Uniform Accountancy Act to be used as a model for accountancy laws in the various individual states.

68.     All states have adopted the AICPA-administered Uniform CPA Exam.  All states restrict the service of auditing financial statements to licensed individuals.

69.     State laws that affect and control CPAs go beyond licensing and include various rules that govern firms and individuals practicing public accountancy including ethics, quality control, and continuing professional education.  These additional rules and regulations have a high degree of similarity nationwide and are generally patterned after comparable AICPA requirements.  For example, ethics requirements generally are adaptations of the AICPA Code of Professional Conduct.

70.     The AICPA is a national, not-for-profit entity that exerts substantial influence on the practice of public accountancy in the United States.  Before the creation of the PCAOB by the Sarbanes Oxley Act in 2002, the SEC had delegated responsibility for setting auditing standards

(or GAAS) to the AICPA.  The AICPA still sets standards that govern the audits of the financial statements of nonpublic companies in the United States, which apply to all class members uniformly.  The AICPA prepares and administers the Uniform Certified Public Accountant ("CPA") Exam.

71.    The AICPA issues and enforces the Code of Professional Conduct (the "Code"). The Code sets ethical requirements for CPAs and states generally use of the Code as a point of reference in adopting their ethical requirements.  Under the Code, virtually any matter of significance in connection with providing audit related accountancy service must be reviewed and approved by the CPA in charge of the engagement, who must *at all times* supervise all unlicensed associates who work on the engagement.

72.    The roles of the AICPA contribute substantially to the uniformity of auditing practice across the United States.

73.    The PCAOB is a not-for-profit entity in charge of standard setting and oversight of both the audits of public companies and the firms that perform those audits.  To audit the financial statements of a public company whose securities are traded in the United States, the audit firm must be registered with the PCAOB.  The registered firm's audit practice is routinely inspected by PCAOB inspectors to evaluate whether the firm is performing in accordance with professional standards.  If the PCAOB becomes aware of departures from professional standards through inspections or other means, the PCAOB can investigate and, if appropriate, discipline the firm and individual auditors.  Under the structure created by SOX, the SEC oversees the professional standards set by the PCAOB.  The PCAOB's standards apply to the audits of all public companies whose securities are traded in the United States.

74.     When the PCAOB became operational in April 2003, it adopted the existing auditing standards previously issued by the AICPA.  The PCAOB has adopted several standards of its own since then.

75.     Together, the AICPA and PCAOB standards provide fairly specific requirements that apply to the audits of financial statements.  These professional standards govern auditing practice throughout the United States.

76.     The Securities and Exchange Commission ("SEC") is a government agency that regulates publicly traded companies and exercises authority over the reports the companies file with it and over the stock exchanges.  As previously explained, the SEC must authorize all PCAOB rules and standards before they become effective.

77.     On information and belief, most of the audit clients of Deloitte in the United States are publicly traded corporations or subsidiaries of public corporations.

78.     The AICPA, PCAOB, and SEC all have rules that require the auditor of financial statements to be "independent" and that spell out in detail actions that impair independence of the audit firm, including prohibited activities by firm personnel.  All the authorities state that performing management functions of a client impairs independence.  Thus, no one working on an audit team can be involved in running the business of audit clients.  This requirement of independence is uniformly required throughout the United States.

79.     Deloitte's internal standards provide strict limits on what activities can be performed by employees who are not CPAs.   An unlicensed Deloitte employee cannot (i) commit Deloitte to an audit engagement;  (ii) approve preliminary engagement activities, including the exercise of judgment to assess the potential risk of a potential audit engagement;

21

(iii) approve and sign engagement letters; (iv) work without control and supervision of the licensed CPA; (v) approve or depart from the audit plan/program; (vi) approve and sign any document containing a substantive opinion, conclusion or determination, including audit opinions, audit reports, internal control opinions on public companies (SOX 404 reviews), or certify financial statements; or (vii) advise client management on matters of significance. Likewise, it is Deloitte's policy that Class members are not permitted to deviate from firm policies and procedures without approval.

### Facts Concerning the Representative Plaintiffs

#### Sana Zara Bukhari

80.     Throughout the time period Plaintiff Bukhari was employed by Deloitte, she regularly worked in excess of 40 hours in a work week, often 55 hours or more in one week. Plaintiff Bukhari did not receive additional compensation for the overtime hours worked.

81.     Throughout her employment, Plaintiff Bukhari performed her tasks under multiple layers of supervision.  The work performed by Plaintiff Bukhari and the Class was not executive, administrative or professional as those terms are defined by the MAWHL.

82.     During all times relevant herein, Plaintiff Bukhari supported the business of Deloitte by working under the direction of her superiors, the managers and partners of Deloitte. Such work involved her assisting her superiors in the production of the products and services provided by Deloitte to its customers.  At all times Bukhari's work was closely supervised, either through immediate oversight or by reporting and review of all work.

83.     The work by Plaintiff Bukhari included: secretarial, clerical, and data entry support work, filing papers, organizing and assembling documents, taking notes of meetings,

22

entering data into spread sheets, schedules or forms, formatting spreadsheets, conforming data entered on journals, or subsidiary journals to original documents, adding numbers on journals, calculating percentages from numbers on financial statements or on journals, and similar tasks. The work performed by Plaintiff Bukhari did not require consistent or regular exercise of independent judgment or discretion, any advanced professional degree or license, or the prior completion of any extended course of academic or technical studies in accountancy.

84.     Many of the audit testing tasks performed by Plaintiff Bukhari were also performed by "interns" who had not completed their undergraduate degrees, but did receive overtime pay.

**Megan Faye Cowell**

85.     Throughout that time period Plaintiff Cowell was employed by Deloitte, she regularly worked in excess of 40 hours in a work week, often 55 hours or more in one week. Plaintiff Cowell did not receive additional compensation for the overtime hours worked.

86.     Throughout her employment, Plaintiff Cowell performed her tasks under multiple layers of supervision.  The work performed by Plaintiff Cowell and the Class was not executive, administrative or professional as those terms are defined by the Minnesota Wage Laws.

87.     During all times relevant herein, Plaintiff Cowell supported the business of Deloitte by working under the direction of her superiors, the managers and partners of Deloitte. Such work involved her assisting her superiors in the production of the products and services provided by Deloitte to its customers.   At all times Cowell's work was closely supervised, either through immediate oversight or by reporting and review of all work.

23

88.     The work by Plaintiff Cowell included: secretarial, clerical, and data entry support work, filing papers, organizing and assembling documents, taking notes of meetings, entering data into spread sheets, schedules or forms, formatting spreadsheets, conforming data entered on journals, or subsidiary journals to original documents, adding numbers on journals, calculating percentages from numbers on financial statements or on journals, and similar tasks.  The work performed by Cowell did not require consistent or regular exercise of independent judgment or discretion, any advanced professional degree or license, or the prior completion of any extended course of academic or technical studies in accountancy.

89.     Many of the audit testing tasks performed by Plaintiff Cowell were also performed by "interns" who had not completed their undergraduate degrees, but did receive overtime pay.

**Jane Killian**

90.     Throughout the time period Plaintiff Killian was employed by Deloitte, she regularly worked in excess of 40 hours in a work week, often 55 hours or more in one week. Plaintiff James did not receive additional compensation for the overtime hours worked.

91.     Throughout her employment, Plaintiff Killian performed her tasks under multiple layers of supervision.  The work performed by Plaintiff Killian and the Class was not executive, administrative or professional as those terms are defined by the Ohio Wage Laws.

92.     During all times relevant herein, Plaintiff Killian supported the business of Deloitte by working under the direction of her superiors, the managers and partners of Deloitte. Such work involved her assisting her superiors in the production of the products and services provided by Deloitte to its customers.   At all times Killian's work was closely supervised, either through immediate oversight or by reporting and review of all work.

24

93.     The work by Plaintiff Killian included: secretarial, clerical, and data entry support work, filing papers, organizing and assembling documents, taking notes of meetings, entering data into spread sheets, schedules or forms, formatting spreadsheets, conforming data entered on journals, or subsidiary journals to original documents, adding numbers on journals, calculating percentages from numbers on financial statements or on journals, and similar tasks.  The work performed by Killian did not require consistent or regular exercise of independent judgment or discretion, any advanced professional degree or license, or the prior completion of any extended course of academic or technical studies in accountancy.

94.     Many of the audit testing tasks performed by Plaintiff Killian were also performed by "interns" who had not completed their undergraduate degrees, but did receive overtime pay.

**FIRST CLAIM FOR RELIEF**
**Massachusetts Wage and Hour Law, 21 Mass. Gen. Laws Ch. 151 §§ 1A et seq., Mass Gen. Law Ch. 149 §§ 100, 101**
**On behalf of the Massachusetts Plaintiff and the Massachusetts Class Members**

95.     Plaintiff incorporates by reference all of the allegations of all prior paragraphs as though fully set forth herein.

96.     Plaintiff and other members of the Massachusetts Class are paid on a salary basis.

97.     Massachusetts wage and hour law requires the payment of overtime compensation at one and one half times the regular rate for all hours worked in excess of forty (40) hours a week to non-exempt employees.  21 Mass. Gen. Laws Ch. 151 §§ 1A *et seq.*, including 21 Mass. Gen. Laws ch. 151 §§ 1B and 15 ("MAWHL").

98.     Plaintiff and all other members of the Massachusetts Class employed by Deloitte during the Massachusetts Class Period have worked more than forty (40) hours per week with no

overtime pay for hours worked in excess of forty (40) hours, and as a result thereof, suffered damages.

99.     Deloitte has and had no good faith basis for failing to pay members of the Massachusetts Class overtime as provided by law.  Deloitte's failure to pay members of the Massachusetts Class is willful.

100.    Therefore, Plaintiff demands that she and all other members of the Massachusetts Class be paid overtime compensation as required by the overtime laws of Massachusetts, including, without limitation, 21 Mass. Gen. Laws Ch. 151 §§ 1A *et seq*., including 21 Mass. Gen. Laws ch. 151 §§ 1B and 15, for every hour of overtime worked in any workweek during the Massachusetts Class Period for which they were not so compensated, plus interest and attorneys' fees as provided by law.

101.    In addition, Plaintiff and all of the members of the Massachusetts Class also demand reasonable attorneys' fees and costs and any additional amount as liquidated damages of the total amount of the wages found to be due, pursuant to the Massachusetts wage and hour laws.

### SECOND CLAIM FOR RELIEF
**Minnesota Wage and Hour Claims, Minn. Stat. Ann. § 177.21 et seq.,**
**On behalf of the Minnesota Plaintiff and the Minnesota Class Members**

102.    Plaintiff incorporates by reference all of the allegations of all prior paragraphs as though fully set forth herein.

103.    Plaintiff and other members of the Minnesota Class are paid on a salary basis.

104.    Minnesota wage and hour law requires the payment of overtime compensation at one and one half times the regular rate for all hours worked in excess of forty (40) hours a week

to non-exempt employees. Minn. Stat. Ann. § 177.21 *et seq.*, including §§ 177.25, 177.27 (collectively, the "Minnesota Wage Laws").

105. Plaintiff and all other members of the Minnesota Class employed by Deloitte during the Minnesota Class Period have worked more than forty (40) hours per week with no overtime pay for hours worked in excess of forty (40) hours, and as a result thereof, suffered damages.

106. Deloitte has and had no good faith basis for failing to pay members of the Minnesota Class overtime as provided by law. Deloitte's failure to pay members of the Minnesota Class is willful.

107. Therefore, Plaintiff demands that she and all other members of the Minnesota Class be paid overtime compensation as required by the overtime laws of Minnesota, including, without limitation, Minn. Stat. Ann. § 177.21 *et seq.*, including §§ 177.25, 177.27, for every hour of overtime worked in any workweek during the Minnesota Class Period for which they were not so compensated, plus interest and attorneys' fees as provided by law.

108. In addition, Plaintiff and all of the members of the Minnesota Class also demand reasonable attorneys' fees and costs and any additional amount as liquidated damages of the total amount of the wages found to be due, pursuant to the Minnesota wage and hour laws.

## THIRD CLAIM FOR RELIEF
### Ohio Wage and Hour Claims, Ohio Rev. Code Ann. §§ 4111.01 et seq., & 4113.15
### On behalf of the Ohio Plaintiff and the Ohio Class Members

109.     Plaintiff incorporates by reference all of the allegations of all prior paragraphs as though fully set forth herein.

110.     Plaintiff and other members of the Ohio Class are paid on a salary basis.

111.     Ohio wage and hour law requires the payment of overtime compensation at one and one half times the regular rate for all hours worked in excess of forty (40) hours a week to non-exempt employees.  Ohio Rev. Code Ann. §§ 4111.01 et seq., and § 4113.15 (collectively, "Ohio Wage Laws").

112.     Plaintiff and all other members of the Ohio Class employed by Deloitte during the Ohio Class Period have worked more than forty (40) hours per week with no overtime pay for hours worked in excess of forty (40) hours, and as a result thereof, suffered damages.

113.     Deloitte has and had no good faith basis for failing to pay members of the Ohio Class overtime as provided by law.  Deloitte's failure to pay members of the Ohio Class is willful.

114.     Therefore, Plaintiff demands that she and all other members of the Ohio Class be paid overtime compensation as required by the overtime laws of Ohio, including, without limitation, Ohio Rev. Code Ann. §§ 4111.01 et seq., and § 4113.15, for every hour of overtime worked in any workweek during the Ohio Class Period for which they were not so compensated, plus interest and attorneys' fees as provided by law.

115.     In addition, Plaintiff and all of the members of the Ohio Class also demand reasonable attorneys' fees and costs and any additional amount as liquidated damages of the total

28

amount of the wages found to be due, pursuant to the Ohio wage and hour laws.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and the other members of the Class, demand judgment in their favor against Deloitte, individually, jointly and severally, for:

A.      Unpaid wages for both regular and overtime compensation due Plaintiffs and the other members of the Massachusetts, Minnesota and Ohio Classes, during each respective Eligibility Periods, plus interest thereon at the statutory rate;

B.      An order temporarily, preliminarily and permanently enjoining and restraining Deloitte from engaging in similar unlawful conduct as set forth herein;

C.      Imposition of a constructive trust upon the assets of the Deloitte to the extent of the sums due to Plaintiffs and the other Class Members;

D.      Pre-judgment and post-judgment interest;

E.      Reasonable attorneys' fees, litigation expenses and costs of suit; and

F.      Such other and further relief as the Court deems just and equitable.


DATED:  May 30, 2012
New York, New York


Respectfully submitted,


Justin M. Swartz

**OUTTEN & GOLDEN LLP**
Justin M. Swartz
Ossai Miazad
Delyanne D. Barros

29

**OUTTEN & GOLDEN LLP**
Justin M. Swartz
Ossai Miazad
Delyanne D. Barros
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: (212) 245-1000

**FOLKENFLIK & MCGERITY**
Max Folkenflik
1500 Broadway, 21st Floor
New York, NY 10036
Telephone: (212) 757-0400

**HOFFMAN & LAZEAR**
H. Tim Hoffman (*pro hac vice* motion forthcoming)
180 Grand Avenue, Suite 1550
Oakland, California 94612
Telephone: (510) 763-5700

**MARKUN ZUSMAN & COMPTON LLP**
William A. Baird, Esq. (*pro hac vice* motion
forthcoming)
17383 Sunset Boulevard, Suite A-380
Pacific Palisades, California 90272
Telephone:  (310) 454-5900

Steven S. Elster
Attorney at Law (*pro hac vice* motion forthcoming)
785/E2 Oak Grove Road, #201
Concord, CA 94518
Telephone: (925) 324-2159

*Attorneys for Plaintiffs and*
*the putative Class*